UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES M. DEWEESE,

               Plaintiff,               Case No. 1:14-cv-386

v.                                 Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Michigan Department of Corrections, McKee and Trierweiler. The Court will serve the complaint on Defendants Heyns, Wright, Bonn and Battle.

**Discussion**

I.      Factual allegations

Plaintiff James M. DeWeese is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC).  He sues the MDOC and its director, Daniel Heyns, as well as the following current/former employees of IBC: Warden Kenneth McKee, Deputy Warden Tony Trierweiler, Resident Unit Manager (RUM) Rufus Wright, Assistant Resident Unit Supervisor (ARUS) Chad Battle, and former ARUS (unknown) Bonn.  Defendant Heyns is sued in both his official and his personal capacity.  The other individual Defendants are sued in their personal capacities only.  (*See* Am. Compl., docket #6, Page ID#77.)

According to the complaint, on February 9, 2013, Plaintiff was terminated from his work assignment and placed in disciplinary segregation as a result of a misconduct conviction.  On March 27, 2013, after he was released from segregation, his request for an indigent loan was denied per MDOC Policy Directive 04.02.120 because he was convicted of a misconduct within the previous 12 months.

On April 4, he asked ARUS Bonn for state-issued soap, toothpaste, and a toothbrush, because he did not qualify for an indigent loan and he had no other way of obtaining these items.  She denied his request, citing Policy Directive 04.02.120.  Plaintiff asked what he could do to obtain hygiene items, and she told him, "Don't go to segregation."  (Am. Compl., docket #6, Page ID#81.)

Plaintiff filed a grievance about Bonn's conduct, and RUM Wright responded to the grievance at Step I of the grievance review process.  Wright allegedly acknowledged that Bonn denied Plaintiff's request based on Policy Directive 04.02.120, but determined that no policy

violation had occurred.    Deputy Warden Trierweiler reviewed and approved Defendant Bonn's response.    Warden McKee denied the grievance at Step II, finding no violation of the policy.

On May 22 and 31, 2013, Plaintiff sent kites to healthcare staff complaining about painful sores that he had developed on his upper inner thighs.    A few days later, he was examined and it was determined that he was infected with a skin fungus or ringworm.    On June 5, he filed another grievance and requested that he be provided with state-issued hygiene items.    On June 18, he informed healthcare staff that the infection had spread and that he still did not have access to soap.

On June 25, RUM Wright interviewed Plaintiff regarding the June 5 grievance and informed Plaintiff that he would provide the necessary hygiene products later that day.    That evening, Plaintiff received a message from healthcare staff indicating that the nurse had arranged for custody staff to provide him a bar of soap.    Plaintiff never received the soap or any other hygiene items, however.    On June 26, Deputy Warden Trierweiler approved RUM Wright's response to the grievance.    Plaintiff also sent kites to Wright and Trierweiler on June 25, 26 and 27 "regarding the promised hygiene." (*Id.* at Page ID#85.)    He never received a response.

On June 28, a nurse inquired whether Plaintiff had received any soap.    She then called the control center and requested that Plaintiff be provided with soap.    That evening, an inmate informed Plaintiff that he was with ARUS Bonn when she received the message from the control center to provide soap to Plaintiff.    Bonn did not respond to the message.

On July 8, Warden McKee rejected Plaintiff's Step II appeal from the June 5 grievance on the basis that Plaintiff provided no evidence to support his assertion that RUM Wright failed to provide the agreed-upon hygiene supplies.

- 3 -

On August 5, Plaintiff sent a kite to ARUS Battle (ARUS Bonn's replacement) asking for soap, toothpaste and a toothbrush. ARUS Battle denied Plaintiff's request, citing Policy Directive 04.02.120.

On August 15, Plaintiff started taking an oral medication to treat his skin infection, because the ointment he had been given by healthcare staff was ineffective without soap. Unfortunately, the medicine interacted poorly with the anxiety medication he was taking at the time. Three days later, he became so ill that he experienced a seizure. Since that time, he has lost some of his sense of smell and taste, and he frequently experiences a painful sensation like needles poking into his hand, arm and neck.

On September 9, Plaintiff was transferred to another unit. The next day, RUM Wright provided Plaintiff with toothpaste, toothbrushes and shampoo. On September 11, Deputy Warden Trierweiler agreed to provide Plaintiff with soap and other hygiene items until he could purchase them for himself. Plaintiff asserts that he was deprived of these items for a total of 161 days.

Based on the foregoing, Plaintiff claims that Defendants: (1) were deliberately indifferent to his health needs, in violation of the Eight Amendment; (2) intentionally inflicted emotional distress on him; and (3) conspired to violate his civil rights. As relief, Plaintiff seeks damages as well as a preliminary and permanent injunction barring the MDOC and its staff from using MDOC Policy Directive 04.02.120 to "punish" him. (*Id.* at Page ID#94.)

II.     Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity

- 4 -

or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court will dismiss the § 1983 claim against the Michigan Department of Corrections.

III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment

Plaintiff claims that Defendants violated his rights under the Eighth Amendment by depriving him of basic hygiene supplies, including soap and toothpaste, for 161 days. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore,

- 6 -

prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Basic elements of hygiene are among the essentials that prison officials must provide to prisoners. *See Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

To prevail on an Eighth Amendment claim, Plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). While a *temporary* deprivation of items necessary for maintaining basic hygiene might not violate the Eighth Amendment, the deprivation of such items for an extended period of time has been held to be sufficiently serious to state a claim. *See, e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) (deprivation of toothpaste for 337 days resulting in periodontal disease is sufficient to state an Eighth Amendment claim).

### 1.  MDOC Director Heyns

Plaintiff claims that Defendant Heyns authorized MDOC Policy Directive 04.02.120 ¶ B(4), which was used by other prison officials to deny Plaintiff hygiene items, and that Heyns failed to properly train his subordinates to provide proper care for prisoners.  Defendant Heyns is not liable for his subordinates' application of the policy, or for failing to properly train his subordinates. A supervisor is not liable for the unconstitutional conduct of his subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can liability be based upon the mere failure to act or failure to train.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *see Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff's assertion that Heyns failed to act or failed to properly train or supervise his subordinates is not adequate to state a claim.

To the extent that Plaintiff sues Heyns for approving the policy, Plaintiff states a claim only if the policy is facially invalid.  In order to demonstrate that a law or policy is facially invalid, a "challenger must establish that no set of circumstances exists under which the [policy]

would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  MDOC Policy Directive 04.02.120 ¶ B(4) precludes a prisoner from obtaining indigent status for twelve months if he has been terminated from a work assignment as the result of misconduct.  *Id.*  The denial of indigent status does not, on its face, authorize or result in the denial of essential needs under the Eighth Amendment.  Although a prisoner denied indigent status is not entitled to a loan to purchase hygiene items from the prison store, nothing about the denial of indigent status authorizes prison officials to withhold state-issued items, or to ignore their duty to protect a prisoner's health and safety.  Indeed, another policy expressly requires prison officials to either provide personal hygiene items to prisoners or permit them to purchase such items from the prison store.  *See* MDOC Policy Directive 03.03.130 ¶ C (effective Feb. 23, 2009) ("Prisoners shall be *provided or permitted to purchase* personal hygiene items, including soap, toothbrushes, toothpaste/toothbrushes/shaving necessities, shampoo, toilet paper, suitable comb/pick/hairbrush, deodorant, and . . . sanitary napkins.") (emphasis added).  Thus, if a prisoner like Plaintiff lacks hygiene supplies and is not "permitted to purchase" them from the prison store (due to lack of funds and ineligibility for an indigent loan), the policy ostensibly requires prison officials to provide them to the prisoner.  *See id.*  The same policy also expressly prohibits the deprivation of "hygienic necessities," except in situations not applicable to Plaintiff (*i.e.*, when the prisoner is in segregation or in a suicide observation cell).  *See id.* ¶ K(2). When the foregoing policies are considered together, it is clear that the denial of indigent status does not authorize prison officials to deprive a prisoner of access to appropriate hygiene supplies.  In other words, the policy challenged by Plaintiff is not facially invalid.  Consequently, Plaintiff does not state an Eighth Amendment claim against Defendant Heyns in his personal capacity.

- 9 -

On the other hand, Plaintiff states a possible claim against Defendant Heyns in his official capacity. Though Defendant Heyns is not personally liable for any damages, as the Director of the MDOC, he in a position to ensure compliance with any order for prospective injunctive relief should Plaintiff prevail on his Eighth Amendment claim. Thus, the Court will allow Plaintiff's official-capacity claim against Defendant Heyns to proceed.

### 2. Warden McKee

Defendant McKee allegedly rejected several of Plaintiff's Step II grievance appeals. As indicated with respect to Defendant Heyns, Defendant McKee is not liable for the actions of his subordinates. Moreover, liability may not be imposed simply because McKee denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Thus, Plaintiff does not state an Eighth Amendment claim against Defendant McKee.

### 3. Deputy Warden Trierweiler

Defendant Trierweiler allegedly approved Defendant Wright's response to Plaintiff's April 4 grievance regarding the denial of hygiene items by Defendant Bonn. Trierweiler also approved Defendant Wright's response to Plaintiff's June 5 grievance, in which Wright allegedly promised to provide the hygiene items to Plaintiff. Defendant Trierweiler is not liable for the conduct of his subordinates or for approving the response to a grievance. *See Shehee*, 199 F.3d at 300; *see also Mitchell v. Hininger*, 553 F. App'x 602, 608 (6th Cir. 2014) ("The denial of a prisoner's grievance does not by itself support a § 1983 deliberate-indifference claim.").

Similarly, Plaintiff does not state a claim against Defendant Trierweiler for failing to respond to Plaintiff's kites on June 25, 26, and 27, in which Plaintiff claimed that Defendant

Wright had not fulfilled his promise to provide soap and other hygiene items.  Trierweiler is not liable for failing to ensure that his subordinate, Defendant Wright, would fulfill a promise to make hygiene items available to Plaintiff.  In short, Plaintiff has not alleged that Defendant Trierweiler actively engaged or participated in any unconstitutional conduct with regard to the deprivation of hygiene items.  Consequently, Plaintiff does not state an Eighth Amendment claim against him.

### 4. Defendants Wright, Bonn & Battle

The Court concludes, at this stage of the proceedings, that Plaintiff's allegations are adequate to state an Eighth Amendment claim against Defendants Wright, Bonn and Battle, based on their involvement in the denial of hygiene supplies to Plaintiff.

### B. Conspiracy

Plaintiff claims that all Defendants engaged in a conspiracy to violate his rights.  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'"  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, vague and conclusory allegations of conspiracy, unsupported by material facts, are insufficient to state a claim.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538

- 11 -

(6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. He merely describes a number of discrete acts occurring over a period of time and involving separate officers, some of whom merely reviewed and/or denied administrative grievances. He has provided no allegations establishing an agreement between Defendants, let alone an agreement to violate his constitutional rights. In other words, Plaintiff's allegations do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Thus, Plaintiff fails to state a plausible conspiracy claim.

IV.   Supplemental Jurisdiction - Defendants MDOC, McKee & Trierweiler

The Court has determined that Plaintiff's § 1983 claim against Defendants MDOC, McKee and Trierweiler is subject to dismissal. To the extent that Plaintiff asserts claims against these Defendants under state law, the Court declines to exercise jurisdiction over such claims. Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims against Defendants MDOC, McKee and Trierweiler will be dismissed without prejudice.

V.   Preliminary Injunctive Relief

In his complaint, Plaintiff requests a preliminary injunction requiring Defendants not to use Policy Directive 04.02.120 to "punish" him, which the Court construes as a request to enjoin

- 12 -

Defendants from applying the policy to prevent Plaintiff from obtaining state-issued hygiene items.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). After review of the complaint and

supporting documents, the Court will assume without deciding that Plaintiff has shown a substantial likelihood of success.

The second factor, however, weighs against a grant of preliminary relief, because the presence of immediate, irreparable harm in the absence of an injunction is not evident. Plaintiff acknowledges in the complaint that he has been given soap, toothpaste and the hygiene items that he requested. He also alleges that he has been transferred to a new unit, which presumably means that he is under the care of different custody staff. He does not allege any facts indicating that he continues to be denied access to soap, toothpaste and other items necessary for maintaining adequate hygiene. Nor does he allege that he is at further risk of harm. Thus, he has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

In addition, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning the treatment and care of prisoners are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context. *See Glover*, 855 F.2d at 286-87. Accordingly, Plaintiff's request for preliminary relief will be denied.

VI.   Appointment of Counsel

Plaintiff has also requested appointment of counsel to represent him in this action. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in

- 14 -

the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Thus, Plaintiff's request for counsel will be denied.

VII.    Assistance with Service

Plaintiff also requests assistance with service of the complaint on ARUS Bonn, ostensibly because Defendant Bonn no longer works at IBC and Plaintiff does not know her present location. (Compl., docket #1, Page ID#18.) Because Plaintiff is proceeding *in forma pauperis* in this action, he is not responsible for serving the complaint. Instead, the Court will order the United States Marshals Service to effectuate service on Defendants, including Defendant Bonn. The United States Marshals Service will attempt to serve the complaint using the last known address available from the MDOC. Plaintiff will be notified if service is unsuccessful. Thus, at this stage of the proceedings, Plaintiff's request for assistance will be denied.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the § 1983 action against Defendants MDOC, McKee, Trierweiler and Heyns (in his personal capacity) will be dismissed on grounds of immunity and/or for failure to state a claim

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court declines

to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.  The

Court will order service of the complaint on Defendants Wright, Bonn, Battle and Heyns (in his

official capacity).  Plaintiff's requests for preliminary injunctive relief, for appointment of counsel

and for assistance with service will be denied for the reasons stated herein.

      An Order consistent with this Opinion will be entered.


                                        _____/s/Robert J. Jonker_____
                                         ROBERT J. JONKER
                               UNITED STATES DISTRICT JUDGE

Dated:  August 22, 2014