UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES M. DEWEESE,

    Plaintiff,

v.                                                                          Case No. 1:14-cv-386
                                                                          Hon. Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

       This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by the four remaining defendants, Daniel Heyns, Rufus Wright, Unknown Bonn (Lori Bonn), and Chad Battle (docket no. 15).

       **I.**       **Plaintiff's complaint**

       Plaintiff is incarcerated by the Michigan Department of Corrections (MDOC). The Court previously summarized the pertinent allegations in plaintiff's amended complaint as follows:

> Plaintiff James M. DeWeese is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC). He sues the MDOC and its director, Daniel Heyns, as well as the following current/former employees of IBC: Warden Kenneth McKee, Deputy Warden Tony Trierweiler, Resident Unit Manager (RUM) Rufus Wright, Assistant Resident Unit Supervisor (ARUS) Chad Battle, and former ARUS (unknown) Bonn. Defendant Heyns is sued in both his official and his personal capacity. The other individual Defendants are sued in their personal capacities only. (See Am. Compl., docket #6, Page ID#77.)

According to the [amended] complaint, on February 9, 2013, Plaintiff was terminated from his work assignment and placed in disciplinary segregation as a result of a misconduct conviction. On March 27, 2013, after he was released from segregation, his request for an indigent loan was denied per MDOC Policy Directive 04.02.120 ["Indigent Prisoners"] because he was convicted of a misconduct within the previous 12 months.

On April 4, he asked ARUS Bonn for state-issued soap, toothpaste, and a toothbrush, because he did not qualify for an indigent loan and he had no other way of obtaining these items. She denied his request, citing Policy Directive 04.02.120. Plaintiff asked what he could do to obtain hygiene items, and she told him, "Don't go to segregation." (Am. Compl., docket #6, Page ID#81.)

Plaintiff filed a grievance about Bonn's conduct, and RUM Wright responded to the grievance at Step I of the grievance review process. Wright allegedly acknowledged that Bonn denied Plaintiff's request based on Policy Directive 04.02.120, but determined that no policy violation had occurred. Deputy Warden Trierweiler reviewed and approved Defendant Bonn's response. Warden McKee denied the grievance at Step II, finding no violation of the policy.

On May 22 and 31, 2013, Plaintiff sent kites to healthcare staff complaining about painful sores that he had developed on his upper inner thighs. A few days later, he was examined and it was determined that he was infected with a skin fungus or ringworm. On June 5, he filed another grievance and requested that he be provided with state-issued hygiene items. On June 18, he informed healthcare staff that the infection had spread and that he still did not have access to soap.

On June 25, RUM Wright interviewed Plaintiff regarding the June 5 grievance and informed Plaintiff that he would provide the necessary hygiene products later that day. That evening, Plaintiff received a message from healthcare staff indicating that the nurse had arranged for custody staff to provide him a bar of soap. Plaintiff never received the soap or any other hygiene items, however. On June 26, Deputy Warden Trierweiler approved RUM Wright's response to the grievance. Plaintiff also sent kites to Wright and Trierweiler on June 25, 26 and 27 "regarding the promised hygiene." (*Id.* at Page ID#85.) He never received a response.

On June 28, a nurse inquired whether Plaintiff had received any soap. She then called the control center and requested that Plaintiff be provided with soap. That evening, an inmate informed Plaintiff that he was with ARUS Bonn when she received the message from the control center to provide soap to Plaintiff. Bonn did not respond to the message.

> On July 8, Warden McKee rejected Plaintiff's Step II appeal from the June 5 grievance on the basis that Plaintiff provided no evidence to support his assertion that RUM Wright failed to provide the agreed-upon hygiene supplies.
>
> On August 5, Plaintiff sent a kite to ARUS Battle (ARUS Bonn's replacement) asking for soap, toothpaste and a toothbrush. ARUS Battle denied Plaintiff's request, citing Policy Directive 04.02.120.
>
> On August 15, Plaintiff started taking an oral medication to treat his skin infection, because the ointment he had been given by healthcare staff was ineffective without soap. Unfortunately, the medicine interacted poorly with the anxiety medication he was taking at the time. Three days later, he became so ill that he experienced a seizure. Since that time, he has lost some of his sense of smell and taste, and he frequently experiences a painful sensation like needles poking into his hand, arm and neck.
>
> On September 9, Plaintiff was transferred to another unit. The next day, RUM Wright provided Plaintiff with toothpaste, toothbrushes and shampoo. On September 11, Deputy Warden Trierweiler agreed to provide Plaintiff with soap and other hygiene items until he could purchase them for himself. Plaintiff asserts that he was deprived of these items for a total of 161 days.

Opinion (docket no. 8 at pp. ID## 99-101).

Based on these allegation, plaintiff has set forth three counts for relief against defendants. In Count I, plaintiff claims that defendants were deliberately indifferent to his health needs, in violation of the Eight and Fourteenth Amendments, 42 U.S.C. § 1983. Amend. Compl. at p. ID# 89. In Count II, plaintiff claims that defendants intentionally inflicted emotional distress on him. *Id.* at p. ID# 91. Finally, in Count III, plaintiff claims that defendants entered into a conspiracy to violate his civil rights in violation of 42 U.S.C. § 1983. *Id.* at p. ID# 92. For his relief, plaintiff seeks damages and injunctive relief barring the MDOC and its staff from using MDOC Policy Directive 04.02.120 (Indigent Prisoners) to "punish" him. *Id.* at p. ID# 94.

The Court previously dismissed all claims against defendants MDOC, McKee and Trierweiler, as well as plaintiff's Count III for conspiracy. *See* Opinion; Order for Partial dismissal

and partial service (docket no. 9). The Court allowed Counts I and II to proceed against MDOC Director Heyns (in his official capacity), RUM Wright, ARUS Bonn and ARUS Battle. In their present motion, defendants seek summary judgment on all of plaintiff's claims *except* for his claim related to ARUS Bonn's denial of an indigent loan on April 4, 2013.

## II. Summary judgment

### A. Legal standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Exhaustion of administrative remedies

#### A. Legal standard

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Plaintiff's grievances

Defendants contend that plaintiff failed to properly exhaust all of his claims asserted against Director Heyns, RUM Wright, and ARUS Battle, and that he exhausted only one claim

against ARUS Bonn (i.e., the denial of an indigent loan on April 4, 2013). In support of this motion, defendants rely on the MDOC Prisoner Step III Grievance Report, which indicates that plaintiff filed two Step III grievance appeals while incarcerated at IBC, those being Grievance no. IBC-13-08-2437-12d3 ("2437") and IBC-12-04-1000-03z ("1000"). *See* MDOC Prisoner Step III Grievance Report (docket no. 16-3). Plaintiff contends that he exhausted some of the claims in Grievance no. IBC-13-08-2323-103F ("2323") (docket no. 20-1 at p. ID# 178).

        1.       **Grievance no. 2437**

Grievance no. 2437 involved an incident on August 15, 2013, in which plaintiff claimed that the healthcare staff deliberately gave him medication which caused an allergic reaction. *See* Grievance no. 2437 (docket no. 16-4). While plaintiff included this claim in his amended complaint, this grievance is directed at non-party P.A. Dennis. Accordingly, Grievance no. 2437 does not exhaust any claims against the defendants in this action.

        2.       **Grievance no. 1000**

In Grievance no. 1000, plaintiff complained that on April 4, 2013, ARUS Bonn denied him an indigent loan to purchase hygiene items. *See* Grievance no. 1000 (docket no. 16-5). Defendants do not seek summary judgment based on this grievance, which properly exhausted plaintiff's claim in this action that ARUS Bonn denied an indigent loan request on April 4, 2013.

        3.       **Grievance no. 2323**

Plaintiff filed Grievance no. 2323 on August 9, 2013. *See* Grievance no. 2323 at p. ID# 178). In the grievance, plaintiff complained that ARUS Battle denied him hygiene products on August 5, 2013 and that RUM Wright, the respondent in a previously-filed resolved grievance, failed to provide promised items on June 25, 2013. *Id.* By way of background, in the amended complaint,

7

plaintiff alleged that he filed a grievance on June 5, 2013, that RUM Wright interviewed him regarding the grievance on June 25, 2013, that Wright promised to provide him with hygiene products, and that Wright failed to provide promised hygiene items. *See* Amend. Compl. at ¶¶ 19-26 (docket 6 at pp. ID## 83-84). The record reflects that the June 5, 2013 grievance referenced in the amended complaint was Grievance no. IBC-13-06-1688-03F ("1688") and that RUM Wright and plaintiff resolved Grievance no. 1688 on June 25, 2013. *See* Grievance no. 1688 (docket no. 1-1 at p. ID# 37).

Policy Directive 03.02.130 addresses resolution of the grievance at Step I, providing in pertinent part:

> The respondent shall interview the grievant unless s/he refuses to participate in the interview . . . The grievant shall have the opportunity to explain the grievance more completely at the interview to enable the Step I respondent to identify and gather any additional information needed to respond to the grievance. The interview also provides the opportunity to resolve the grievance to the mutual satisfaction of the grievant and the Department.

Policy Directive 03.02.130 ¶ Y. This Court has determined that a prisoner properly exhausted a grievance when it was resolved at Step I, i.e., "[w]here a prisoner has received the relief he requested in his grievance, he has no basis for appealing his grievance to another step." *Grear v. Gelabert*, No. 1:07-CV-203, 2008 WL 474098 at *10 (W.D. Mich. Feb. 15, 2008). In reaching the determination, the Court noted that under former Policy Directive 03.02.130 (CC) and (GG), "('If a grievant is dissatisfied with the response received at [the previous] Step [ ] or does not receive a timely response' s/he may appeal to the next step)". *Id.* The current version of Policy Directive 03.02.130 includes similar language. *See* Policy Directive 03.02.130 (eff. July 9, 2007) (providing in ¶ BB that "[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I

or if s/he did not receive a timely response" and in ¶ FF that "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response"). *Cf. Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("it would be counterintuitive to require inmates who win during the grievance process to appeal their victories").

In this case, although Grievance no. 1688 was resolved, plaintiff apparently did not receive the agreed-upon relief from the MDOC and appealed the resolved grievance to Step II, claiming that he never received the hygiene materials. *See* Grievance no. 1688 (Step II) (docket no. 1-1 at p. ID# 42). Although Policy Directive 03.02.130 ¶ Y does not explicitly allow for the appeal of a resolved grievance, the warden apparently denied the appeal on the merits stating that the Step I response was "both adequate and appropriate to address the allegations or concerns presented in the grievance" and noted that "[plaintiff's] appeal provides neither evidence nor information that substantiates his allegations." *Id.* (Step II response) (docket no. 1-1 at p. ID# 43).

As discussed, plaintiff's later filed Grievance no. 2323 appears to have been brought, in part, to seek relief on RUM Wright's alleged failure to provide him with hygiene products as agreed. It is well established that a prisoner plaintiff cannot maintain a § 1983 action against a prison employee who simply denies a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (a prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983); *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"); *Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Here, however, RUM Wright did not deny the grievance. Rather, he

resolved the grievance and stated that "Grievant was given hygiene items." *See* Grievance no. 1688 at p. ID# 37.  Because RUM Wright did not deny the grievance, the rule announced in *Shehee* does not bar plaintiff's claim against him.

As discussed, *supra*, Grievance no. 2323 complained about the failure of both RUM Wright and ARUS Battle to provide hygiene items.  Grievance no. 2323, like the previously-filed Grievance no. 1688, resulted in a resolution of the matters grieved.  In Grievance no. 2323, the respondent, former defendant Trierweiler, stated:

> Grievant was given hygiene items on 9/10/13 and since he was moved from HU5 to HU4 on 9-9-13 he lost his job.  Classification was contacted and he was tagged as needing a job.  He will be provided hygiene products by RUM Wright until he starts work again.

*Id.*  Plaintiff signed off on the grievance as "resolved at Step I" on September 10, 2013.  *Id.*

Based on this record, the Court concludes that Grievance no. 2323 grieved both RUM Wright's failure to provide hygiene products on June 25, 2013 per the resolved Grievance no. 1688 and ARUS Battle's failure to provide hygiene products on August 5, 2013.  Because plaintiff and the MDOC resolved Grievance no. 2323 "to the mutual satisfaction of the grievant and the Department" pursuant to Policy Directive 03.02.130 ¶ Y, the Court concludes that this grievance was properly exhausted.  *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91; *Grear*, 2008 WL 474098 at *10.

### 4. Summary

Defendants seek summary judgment for lack of exhaustion on all claims asserted against them except plaintiff's claim that ARUS Bonn denied him an indigent loan on April 4, 2013.  Viewing the record in the light most favorable to the non-movant (plaintiff), there is no evidence that

plaintiff properly exhausted any other claims against ARUS Bonn or that he properly exhausted any claims against defendant Director Heyns. However, the record reflects that plaintiff did properly exhaust his claims that RUM Wright failed to provide him with hygiene items on June 25, 2013 and that ARUS Battle failed to provide him with hygiene items on August 5, 2013. Accordingly, defendants' motion for summary judgment for lack of exhaustion should be granted as to Director Heyns and ARUS Bonn, and denied as to RUM Wright and ARUS Battle.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 15) be **GRANTED** as to Director Heyns and ARUS Bonn and **DENIED** as to defendants RUM Wright and ARUS Battle.

I further recommend that defendant Director Heyns be **DISMISSED** from this action.

Dated: August 24, 2015          /s/ Ray Kent
                                RAY KENT
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).